1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12  RESILIENT FLOOR COVERING           Case No. 12-cv-01784 NC
    PENSION TRUST FUND and BOARD OF
13  TRUSTEES, RESILIENT FLOOR          **REPORT AND**
    COVERING PENSION TRUST FUND,       **RECOMMENDATION TO GRANT**
                                       **MOTION FOR DEFAULT**
14              Plaintiff,             **JUDGMENT**

15         v.                          Re: Dkt. No. 25

16  HERITAGE FLOORS, Inc. and CREATIVE
    TILE AND FLOORING, Inc.
17
               Defendant.
18

19          In this ERISA action, plaintiffs employee benefit plan and its trustees move to enter default

20  judgment under Federal Rule of Civil Procedure 55(b) against defendants Heritage Floors and

21  Creative Tile and Flooring.  Finding that the *Eitel* factors favor entry of default judgment, the

22  Court RECOMMENDS that the District Court GRANT plaintiffs' motion for default judgment and

23  ENTER judgment against defendants Heritage Floors and Creative Tile in the sum of $709,361.32.

24                        **I. BACKGROUND**

25  **A.    Parties**

26          Plaintiff Resilient Floor Covering Pension Trust Fund (Pension Fund) is an employee

27  benefit plan under the Employee Retirement and Security Income Act (ERISA), 29 U.S.C.

28  § 2002(2).  Compl. ¶ 5, Dkt. No. 1.  Defendant Heritage Floors, Inc. is a signatory to collective

    Case No. 12-cv-01784 NC
    ORDER Re: Default Judgment

1   bargaining agreements, which required contributions to the Pension Fund until July 2011.  *Id.* ¶ 9.

2   Defendant Creative Tile and Flooring, Inc. is owned by Heritage Floors and under common

3   control, constituting a single employer under § 4001(b) of ERISA.  *Id.* ¶ 10.  John H. Papke is sole

4   shareholder of both Heritage Floors and Creative Title.  *Id.* ¶ 21.

5   **B.     Facts Alleged in the Complaint**

6           Under ERISA, an employer who withdraws from a pension fund must pay withdrawal

7   liability in the amount equal to that employer's pro rata share of the plan's unfunded vested

8   benefits.  29 U.S.C. §§ 1381, 1391; *see* Pl.'s Mot. Default Judg. at 3.  Heritage Floors withdrew

9   from the Pension Fund in July 2011.  Compl. ¶ 12.

10          Here, plaintiffs determined withdrawal liability under ERISA and rules of the Pension Fund

11  of $606,238 to be paid in 39 quarterly installments of $20,706 and an additional 40th payment of

12  $972.  *Id.* ¶ 14.  On August 16, 2011, the Pension Fund notified Heritage Floors, and all businesses

13  under common control, of the liability.  *Id.*  Heritage Floors responded on November 9, 2011 that

14  the hourly rate was calculated improperly and requested revision of the calculations.  *Id.* ¶ 15.  The

15  Pension Fund recalculated the withdrawal liability based on the new hourly rate and notified

16  Heritage Floors of the revised calculations by mail on February 9, 2012.  *Id.*

17          Thereafter, Heritage Floors made no payments to the fund, and did not demand or initiate

18  arbitration as required under ERISA.  29 U.S.C. § 1401(a)(1).  After the sixty day time limit for

19  initiating arbitration had expired, the Pension Fund considered Heritage Floors in default.  *Id.* ¶ 17.

20  The Pension Fund demanded that all trades or business under common control with Heritage

21  Floors pay the full withdrawal liability, liquidated damages, interest, and attorneys' fees and costs

22  of the action under the Pension Fund and sections 502 (g)(2) and 4301 of ERISA.  *Id.* ¶ 20.

23  **C.     Procedural History**

24          On April 10, 2012, the Pension Fund filed this enforcement action under ERISA to collect

25  delinquent withdrawal liability and enforce the withdrawal liability.  Compl. ¶ 1.  On June 4, 2012,

26  John Papke, as sole shareholder for both defendant corporations, filed an answer pro se on behalf

27  of Heritage Floors and Creative Tile and Flooring.  *See* Ans., Dkt. No. 5.  On October 5, 2012,

28  Judge White granted plaintiffs' motion to strike the answer on the grounds that Local Rule 3-9(b)

1    requires a corporation to appear through counsel.  Order Mot. Strike Ans. at 1, Dkt. No. 18.  On

2    November 28, 2012, the Pension Fund filed for entry of default after Heritage Floors did not file a

3    further answer.  Pl.'s Mot. Entry Default ¶ 5, Dkt. No. 20.  The court clerk entered default on

4    December 3, and on December 31, 2012, the Pension Fund moved for a default judgment.  Entry

5    of Default, Dkt. No. 23.; Pl.'s Mot. Default Judg., Dkt. No. 25.  District Judge White referred the

6    motion to this court for report and recommendation.  Order of Referral at 1, Dkt. No. 27.

## II. STANDARD OF REVIEW

8           A default may be entered against a party who fails to plead or otherwise defend an action

9    and against whom a judgment for affirmative relief is sought.  Fed. R. Civ. P. 55(a). After entry of

10   default, a court has discretion to grant default judgment on the merits of the case.  Fed. R. Civ. P.

11   55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

12          At the default judgment stage, the factual allegations of the complaint, except those

13   concerning damages, are deemed admitted by the non-responding parties.  *Geddes v. United Fin.*

14   *Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  In deciding whether to grant default judgment, the Court

15   may then consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the

16   merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of

17   money at stake in the action; (5) the possibility of a dispute  concerning material facts; (6) whether

18   the default was due to excusable neglect; and (7) the strong policy favoring decisions on the

19   merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III. DISCUSSION

21   **A.    Subject Matter and Personal Jurisdiction**

22          In considering whether to enter a default judgment, a district court first must determine

23   whether it has jurisdiction over the parties and the subject matter.  *In re Tuli*, 172 F.3d 707, 712

24   (9th Cir. 1999).

25          **1.    Subject Matter Jurisdiction**

26          This Court has subject matter jurisdiction in this ERISA action under 29 U.S.C. §

27   1451(a)(1), which permits a trustee to enforce the employer's withdrawal liability in a civil action.

28   Under ERISA, "district courts of the United States shall have exclusive jurisdiction" of a

1    withdrawal liability claim.  29 U.S.C. § 1451(c).

2         **2.    Personal Jurisdiction Over Defendants-in-Default**

3         To enter default judgment, the Court must also have a basis for the exercise of personal

4    jurisdiction over the defendants-in-default.  *Tuli*, 172 F.3d at 712; *see also King v. Russell*, 963

5    F.2d 1301, 1306 (9th Cir. 1992).  Under ERISA, beneficiaries may bring an enforcement action in

6    any federal district court "where the plan is administered."  29 U.S.C. § 1132(e)(2).  Here, the

7    Pension Fund is administered in this district.  Compl. ¶ 4.  The plaintiffs are fiduciaries of the

8    Pension Plan as set out in ERISA § 1002(21)(A) and maintain their principal place of business in

9    Alameda, California.  Compl. ¶ 6-7.

10        ERISA also provides that "process may be served in any other district where a defendant

11   resides or may be found."  *Id*.  Under this nationwide service of process provision, a court may

12   exercise personal jurisdiction over a defendant anywhere in the United States, regardless of the

13   state in which the court sits.  *Vivien v. Worldcom, Inc.*, No. 02-cv-01329 WHA, 2002 WL

14   31640557, at *2 (N.D. Cal. July 26, 2002); *see also Denny's, Inc. v. Cake*, 364 F.3d 521, 524 (4th

15   Cir. 2004) (ruling that a federal district court in South Carolina could exercise personal jurisdiction

16   over the California Labor Commissioner because the ERISA plan was administered in South

17   Carolina, the Commissioner had been served in California, and the action was a proper ERISA

18   enforcement action).

19        ERISA § 1301(b)(1) defines an employer who is liable for withdrawal liability as all

20   "trades or businesses" that are under "common control" with the entity making contributions to the

21   pension plan.  Plaintiffs allege and demonstrate by exhibit that defendants Heritage Floors and

22   Creative Tile and Flooring are both trades and businesses under common control with John Papke

23   as the sole shareholder.  Pl.'s Mot. Default Judg. at 4-5, Exh. 1 at 9.  Defendants are both

24   Washington corporations, thus having the requisite minimum contacts with the United States.  Pl.'s

25   Mot. Default Judg. at 5.

26        Plaintiffs served the summons and complaint to defendants' secretary of the corporation at

27   its principal office by certified mail on May 22, 2012.  *See* Pl.'s Affidavit of Diligence at 3, Dkt.

28   No. 21.  Service by certified mail is proper if the defendants' address is known.  *Mennonite Bd. of*

*Missions v. Adams*, 462 U.S. 791, 800 (1983).

In addition, on June 4, 2012, John Papke appeared pro se on behalf of both Heritage Floors and Creative Tile and Flooring.  Ans. at 1.  Under Federal Rule of Civil Procedure 12(h)(1), a defendant waives the ability to contest insufficient service of process if it is not included in a responsive pleading.  *See Savarese v. Edrick Transfer & Storage, Inc.*, 513 F.2d 140, 144 (9th Cir. 1975).  Thus, this Court has a basis for the exercise of personal jurisdiction over the defendants-in-default.  *See Tuli*, 172 F.3d at 712.

**B.    Default Judgment**

For the following reasons, and in consideration of the *Eitel* factors, the Court finds entry of default judgment proper.

**1.    Prejudice to Plaintiff**

In considering the first *Eitel* factor, the Court weighs the possibility of prejudice to the plaintiff if default is not entered.  *Eitel*, 782 F.2d 1470, 1471 (9th Cir. 1986).  Here, plaintiffs have sought payment for withdrawal liability from the defendants for over one year without success.  McCormick Decl. ¶ 3-5, Dkt. No. 25-1.  In the absence of a court order for enforcement of the withdrawal liability, the Pension Fund would likely be unable to collect the owed withdrawal liability from defendants.  Pl.'s Mot. Default Judg. at 6.

**2.    The Merits of the Claim, Sufficiency of the Complaint, and the Money at Stake**

ERISA and the Pension Plan prescribe that an employer is in default of his withdrawal liability after 60 days of notification of the withdrawal.  29 U.S.C. § 1401(b).  In the absence of arbitration,

> the amounts demanded by the plan sponsor under section 4219(b)(1) shall be due and owing on the schedule set forth by the plan sponsor.  The plan sponsor may bring action in a State or Federal court of competent jurisdiction for collection.

29 U.S.C. § 1401(b).  An award for withdrawal liability, liquidated damages, interest, attorney's fees, and costs are mandatory under ERISA.  29 U.S.C. § 4301(b); *Amalgamated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926 (9th Cir. 1986).

Here, Heritage Floors was a contributing employer and completely withdrew from the Pension Fund.  Pl.'s Mot. Default Judg. at 7.  The Pension Fund notified Heritage Floors of its

withdrawal liability under ERISA and the contracted Pension Fund Plan and demanded payment. McCormick Decl. ¶ 3.  The Pension Fund has provided evidence by signed declaration that Heritage Floors was notified of this obligation and requested that the calculation of the liability be reevaluated.  *See id.* ¶ 4, 6.  After being notified of the new withdrawal liability calculations, Heritage Floors did not timely initiate arbitration and the Pension Fund considered the defendants to be default.  Pl.'s Mot. Default Judg. at 7.  The merits of the claim favor a default judgment, while the complaint has sufficiently documented the demands for payment, the lack of arbitration, and the Pension Fund's agreement with Heritage Floors.  Finally, the sum of money at stake is not in contest as both ERISA and the Pension Fund collective bargaining agreement define the amount owed for withdrawal liability.

### 3.  Possibility of Dispute Concerning Material Facts

Under ERISA, "If no arbitration proceeding has been initiated . . . the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor."  29 U.S.C. § 1401(b).  Here, Heritage Floors had sixty days to initiate arbitration from the Pension Fund's final request for compensation of withdrawal liability.  Its failure to do so precludes Heritage Fund from disputing the amount owed in the present controversy.  *See Teamsters Pension Trust Fund v. Allyn Transp. Co.,* 832 F.2d 502, 504 (9th Cir. 1987).

### 4.  Defendant's Excuse for Default

As described above, the record reflects that Heritage Floors was notified numerous times of its withdrawal liability and the proceedings before this Court.  *See* Order Striking Ans. at 1 ("Due to the failure of Defendants to file an opposition to the motion to strike, the Court issued an order to show cause why the motion to strike should not be granted as unopposed. Defendants were ordered to file a response by September 27, 2012, but failed to do so.").  Given that Heritage Floors has been absent before the Court since those instructions, there appears to be no excuse for defendants' default.

### 5.  Policy Favors a Decision on the Merits

The Pension Fund suggests that Heritage Floors refuses to litigate the case, which indicates a policy towards granting a default judgment.  Pl.'s Mot. Default Judg. at 8.  Courts have noted

1  that ERISA's withdrawal liability uses strong language to ensure that multiemployer pension funds

2  are protected despite an employer's financial situation. *Pension Ben. Guar. Corp. v. R.A. Gray &*

3  *Co.*, 467 U.S. 717, 720 (1984).  There is strong policy favoring ensuring the Pension Fund is

4  properly compensated for Heritage Floor's withdrawal.

5  ERISA mandates that this Court enforce withdrawal liability.  Heritage Floors has been

6  given notice on many occasions as to its liability, the pending action, the entry of default, and the

7  request for default judgment.  Heritage Floors was aware of its withdrawal liability and the amount

8  it was required to pay as a result, given its response to Mr. McCormick on November 9, 2011.

9  There appears to be no controversy to settle and the defendants have had sufficient opportunities to

10  respond.  Accordingly, this Court finds that default judgment is proper.

11  **C.     Calculation of Plaintiff's Damages**

12  In its motion, the Pension Fund requests and award of: (1) unpaid withdrawal liability; (2)

13  liquidated damages; (3) interest; (4) reasonable attorney's fees; and, (5) costs.  Pl.'s Mot. Default

14  Judg. at 2.  In ordering a default judgment, the Court retains discretion to determine the amount of

15  damages owed. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Plaintiffs are

16  entitled to all of these damages under 29 U.S.C. § 1132(g)(2), which provides that in an action to

17  recover delinquent contributions in which a judgment in favor of the plan is awarded, the court

18  *shall* award the plan-

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of-
>> (i)  interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

26  *Nw.Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996).  In enforcing withdrawal

27  liability, section 1132(g)(2) is "mandatory and not discretionary." *Operating Eng'rs Pension Trust*

28  *v. Beck Eng'g & Surveying, Co.*, 746 F.2d 557, 569 (9th Cir. 1984).  Under 29 U.S.C. §

4219(c)(5), an employer is in default of its withdrawal liability if the employer fails to make payments to the Pension Plan and "the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure." Therefore, the Pension Fund is entitled to the unpaid contributions, interest, liquidated damages, and reasonable attorney's fees and costs.

### 1.   Withdrawal Liability

Plaintiffs assert that Heritage Floors withdrew from Pension Fund in July 2011. Compl. ¶ 12. Plaintiffs determined withdrawal liability in compliance with ERISA and the rules of the Pension Fund. *Id.* ¶ 14. Accordingly, the total amount due is $606,238, comprised of thirty nine quarterly installments of $20,706 and an additional fortieth payment of $972. Compl. ¶ 14. This Court recommends this amount be awarded in full.

### 2.   Liquidated Damages

Under ERISA § 502(g)(2), liquidated damages may be awarded when: (1) the employer is delinquent at the time the action is filed, (2) the court enters a judgment against the employer, and (3) the plan provides for an award of liquidated damages. 29 U.S.C. § 1132(g)(2)(C); *see also Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253 (9th Cir. 1996).

Here, the Pension Fund Trust Agreement provides for liquidated damages in the amount of 10% of the withdrawal liability, which is equal to $60,623.38. McDonough Decl. ¶ 11, Dkt. No. 25-2. As the other two prongs having been fulfilled, an award of liquidated damages in this amount is proper.

### 3.   Interest

Plaintiffs seek interest on the withdrawal liability, calculated at a rate of 3.25%, according to the terms of the Pension Fund, from October 16, 2011. McDonough Decl. ¶ 11. This is more than two months from when Heritage Floors withdrew from the Pension Plan and after 60 days of notification to Heritage Floors of its responsibility. The total interest requested, and the Court recommends awarding, is $23,859.

### 4.   Attorney's Fees and Costs

In its motion for default judgment, plaintiffs request $250.00 per hour for attorneys and

1    $125.00 per hour for paralegals.  McDonough Decl. ¶ 3.  Plaintiffs request that the 76.53 hours of

2    attorney's work and the $1,145.32 in costs be awarded.  *Id.* ¶ 9.

3                    **a.    Hourly Rate**

4            The Court may determine reasonable attorney's fees by comparing the requested hourly

5    rate with the prevailing rate in the community for similar work performed by attorneys of

6    comparable skill, experience, and reputation.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111

7    (9th Cir. 2008); *see also Welch v. Met. Life Ins. Co*, 480 F.3d 942, 946 (9th Cir. 2007).

8            Comparable cases have granted attorney's fees ranging from $180.00 per hour for

9    associates to $255.00 per hour for shareholder rates, while paralegal rates have generally been

10   awarded at $115.00 per hour.  *See, e.g., Pension Trust Fund for Operating Eng'rs v. Joco*

11   *Geospatial Co., Inc.*, 11-cv-2482 EMC, 2011 WL 6303404, at *5 (N.D. Cal. Dec. 16, 2011)

12   (finding rates of $195.00 per hour for associates and $115.00 per hour for paralegals to be

13   reasonable); *Auto. Indus. Pension Trust Fund v. Bi-City Paint & Body Co., Inc.*, 12-cv-01972 LB,

14   2012 WL 6799735, at *8 (N.D. Cal. Dec. 6, 2012) (finding rates of $220.00 per hour for a senior

15   associate and $120.00 per hour for paralegals to be reasonable); *Operating Eng'rs Pension Trust*

16   *Fund v. Clark's Welding Mach.*, No. 09-cv-0044 SC, 2010 WL 1729475, at *5 (N.D. Cal. Apr. 27,

17   2010) (finding paralegal rates of $110 per hour, associate rates of $185 per hour, and shareholder

18   rates of $255 per hour to be reasonable).

19           Here, the Pension Fund has enumerated the qualifications of Katherine McDonough and

20   three other attorneys as well as two paralegals.  McDonough Decl. ¶ 2.  It requests $250.00 per

21   hour for attorneys and $125.00 per hour for paralegals.  *Id.* ¶ 4.  Given that all attorneys have more

22   than ten year of experience, an award of the rate of $250.00 per hour falls within the range of past

23   awards for shareholders.  The hourly rate for paralegals is consistent with the awards previously

24   listed.  The Court finds the rates to be reasonable.

25                   **b.    Reasonable Time**

26           The party requesting fees must provide detailed time records documenting the tasks

27   completed and the time spent.  *See Welch v. Metropolitan life Ins. Co.*, 480 F.3d 942, 945-46 (9th

28   Cir. 2007).  The Pension Fund has provided the Court with thorough documentation for all of the

Case No. 12-cv-01784 NC
ORDER Re: Default Judgment            9

time expended. *See generally* McDonough Decl. Based on its review of the time billed and the time sheets submitted in support of plaintiffs' fee request, the Court concludes that the hours are reasonable. *See e.g., Auto. Indus. Pension Trust Fund*, 12-cv-01972 LB, 2012 WL 6799735, at *9 (finding that 86.3 hours was reasonable where plaintiff's attorneys filed an ERISA withdrawal enforcement action and filed for default judgment.); *Pension Trust Fund for Op. Eng.*, 11-cv-2482 EMC, 2011 WL 6303404, at *5 (finding that 19.9 hours worked by attorneys and 61.92 hours worked by paralegals was reasonable where plaintiff's attorney filed an ERISA withdrawal enforcement action and filed for default judgment.).

## IV. RECOMMENDATION

As ERISA mandates that the court award withdrawal liability, attorney's fees, costs, interest, and liquidated damages, the Court recommends that the District Court GRANT plaintiffs' motion for default judgment. The Court further recommends it award plaintiffs under 29 U.S.C. § 1132(g)(2): (1) withdrawal liability in the amount of $606,238; (2) liquidated damages in the amount of $60,623.80; (3) interest in the amount of $23,859.20; (4) reasonable attorney's fees in the amount of $17,495.00; and (5) non-taxable costs in the amount of $1,145.32. The total sum recommended is $709,361.32, jointly and severally against defendants. Any party may object to this recommendation within 14 days of the filing date of this order. Fed. R. Civ. P. 72(b).

IT IS SO ORDERED.

Date: February 11, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge